George Chalas on behalf of the appellant. Your Honor, this case is about whether or not the district court had admiralty jurisdiction over our client's claim. And we say the court made a mistake because it did have admiralty jurisdiction and should not have dismissed as on the basis of a lack of subject matter jurisdiction. This is not a perverse or casuistic case on the fringe of the court's admiralty jurisdiction. Indeed, it falls squarely within the case is about the maintenance, the repair, and the operation of a vessel. It's about the port state control of the tension. Counsel, you're suing in tort. Isn't that correct? Yes, Your Honor, that is correct. And didn't the torts relating to the value cargo on navigable waters in navigation in the midst of performing a charter party. So I agree with Your Honor's statement that the actors were based on land, but that's not the test. The test is where the act gives effect because a tort, just having torches conduct doesn't create the court. It's the act plus that that makes the tort. So you are arguing essentially that if somebody negligently fires a gun in New York, and hits somebody in Connecticut, the tort is in Connecticut. Isn't that standard tort law? I'm not sure how to answer that in the maritime context, Your Honor. But I would say that Judge Haight, who I think is well known to be one of the finest judges for admiralty matters has looked at questions of a similar nature, such as whether the And he found that it did. And that was back in 2004. And the Second Circuit cites those cases that Judge Haight wrote many, many times, and I would argue, citing with approval. So I think because Judge Haight was in the admiralty context, simply doing what is standard. First day tort. Because torts in admiralty are still torts and a tort occurs where the injury occurs, not where the wrong was done. Right. I agree, Your Honor. And the reason why I hesitate to be as bullish as I may otherwise be, is because in the admiralty context, some of the case laws been confused, and I'll share why. If you go through the historical evolution of admiralty tort jurisdiction, at one time, not that long ago, it was strictly a locality test, right? Was it on navigable waters? Yeah, good enough. You've checked the box. Now we've got a maritime case. But in 1972, the Supreme Court looked at Executive Jett, and they said, Wait a minute, a plane that crashes down into the time layer to the test. And basically, they, it's a nexus test. And they questioned whether the application of a purely mechanical application of the locality test was right. And then they said, No. And then again, the Supreme Court looked at it 10 years later in 82 and foremost, and they say, Well, you have to have a substantial relationship to maritime activity. And then again, in 1995, 13 years later, the Supreme Court looks at the issue again, in Grubart versus Great Lakes, and that's a company that was doing a construction project. And the fact that they were working from a boat and driving piles, that activity somehow damaged a subterranean tunnel that was way below the seabed. And the Supreme Court said, Yeah, that's right, that that gives maritime jurisdiction that that tort is a maritime tort. So I would argue to this court, that if you look at our own jurisprudence, and starting with Judge Kate's decision in 2004, where he first of all, he criticizes the Grubart test, he says something along the lines of I may perhaps be excused for saying that the court's chart does not reveal the precise location of every hazard to jurisdictional navigation. He says like the test isn't right, it leaves too much subjectivity, we need to be more precise about this, but he can't give us a more precise test. The Second Circuit, though, gives us some guidance. If you look at two decisions that were, well, a number of decisions, but two particularly that were written by Judge Katzmann, you'd look in 2014, this court looked at a case where there was a bunch of people fighting on a dock. And as a result of the fight, some people fell into the water. What this court was doing in its historical look at admiralty, tort jurisdiction, was trying to keep a class of odd cases out, like, basically people falling off a dock into the water is not a maritime case, it has nothing to do with maritime commerce. Right? And he goes on to write something along the lines as follows. Through long experience, the law of the sea knows how to determine whether a particular ship is seaworthy, and it knows the nature of maintenance and cure. It is concerned with maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage. Our story involves almost every one of those things that Judge Katzmann told us about. Was this ship seaworthy? The people who were operating the vessel, yes, true, from an office, whether it be in Greece or elsewhere, it's there responsibilities to make sure their vessel is seaworthy. Is abandonment of the vessel the conduct of which you're complaining? Certainly it is part of it, it's broader. Other than abandonment, what's the conduct of which you're complaining? The abandonment of the vessel, her crew and her cargo. What anything besides abandonment are you complaining about as conduct causing you loss? Yes, correct. We're also complaining about the confederation of the defendants to avoid paying the cargo claim, the maritime cargo claim, because... Okay, that's the question. The question is when there is an insurance claim and some wrongs are done with the insurance claim, does the fact that the insurance claim refer to a maritime injury enough to make the injury with respect to the insurance claim be on sea or is that on land? That's the key question. The question is if the ship was there, it's fine. You are complaining of some tortious behavior with respect to insurance, and the question is where is the injury from the insurance? Yes, correct, your honor. So I would say the facts become very important to consider here. You have the beneficial owners of the vessel, two brothers based in Greece, one of which sits on the board and subsequently has been promoted to chairman of the board of the insurance company. This is specialized marine protection and indemnity insurance, and it's well worn wheel that it's mutual insurance where it's pay to be paid. So the when you look at this inextricably intertwined ball of bad conduct, you have the brothers who have an uncapitalized company, that they're operating a ship that's unseaworthy, that they orchestrate the abandonment of the cargo and wearing two hats, one of the brothers who sits on the board of the insurance company decides, hey, if I can't pay as the member or insured, then you don't have to pay it, and for his for his very clever actions gets reward with a promotion to chairman of the board. So what is the conduct you're complaining about? Do you claim that the unseaworthiness of the vessel damaged your product? Yes, indeed. You do? We do. And how did the unseaworthiness contribute to the damage to your cargo? So it's not too far removed from a direct line. In fact, an immediate line, but it's a direct. The vessel turns up in Brazil to load the cargo, right? The port state control authorities go on board and they find like almost 50 deficiencies and they detain the ship as a result of the lack of maintenance and unseaworthiness. While the vessel is sitting there, she breaks free and then all of a sudden the vessel gets moved. As a result of this, the cargo that was supposed to be loaded, can't complete loading and the cargo that had been loaded winds up sitting on board and rotting because of the abandonment of the vessel, right? And so you said exactly, and that's the phrase I'm interested in. You said because of the abandonment. And I just wonder if it's because, as you just said, because of the abandonment, not because of the unseaworthiness of the vessel. Right again, but those are inextricably... The vessel didn't spring a leak that damaged the cargo, did it? No, I think if the facts were... The unseaworthiness of the vessel damaged the cargo. I think if the factual record was able to be developed more, you'll find that the cargo holes were also problematic because the cargo like this should be able... Well, problematic doesn't tell me much. Does your complaint allege with some the damage? Yes, it does because of the detention. We're not the chain of events. It's not that the unseaworthiness directly damaged your cargo. Your claim is the unseaworthiness led to the detention. The detention led to the movement of the ship. The ship broke loose. The ship then damaged. The cargo then got damaged. Had it not been unseaworthy in the very first step, all these things wouldn't have happened. Is that the claim? Yeah, I think that's right. I would say it slightly differently, Your Honor. I would say but for the unseaworthiness that the vessel never would have had the problems that it experienced with the Port State Control Authorities. It is the causative kickoff to the chain of events. It's not the other way around. It's not just a piece of the chain of events. It is the prime piece of the prime link in the chain. All right, counsel. You've reserved three minutes for rebuttal. We'll hear from counsel for the Gordo Mycalysis or something like that. Good morning, Your Honor. May it please the court. Very privileged to be here today. Hi, my name is William Bennett along with my partner, Lauren Wilgus, Representative Pelley, George, and Estathios Gordo Mycalis. First off, none of the defendants are the owners of the vessel, the ship managers of the vessel, owners of the cargo, and there is absolutely no unseaworthiness claim in the complaint. The district court correctly ruled the plaintiff's complaint was subject to dismissal due to lack of subject matter jurisdiction because the five non-maritime causes of action, namely prima facie court, promissory fraud, civil conspiracy, unjust enrichment, and negligence did not meet the location test or both prongs of the connection test required to find admiralty jurisdiction under the Supreme Court's ruling in Grubart. Counsel, counsel. Yes, sir. If there is an to a maritime wrong, is something went wrong with a ship, let's leave aside whether they pled unseaworthiness or not. That's a key issue. But let's assume that that is so. Then some people conspire, do some tort with respect to the paying of the insurance. Is that not an admiralty claim? That is, wouldn't that bar any insurance claim on an insurance wrong with respect to anything of a ship at sea? Not every action that occurs on the water would be admiralty jurisdiction. The answer to that is no, even though they go to maritime injuries because of a wrong occurs on land. That's extraordinary. I thought that much of admiralty jurisdiction had to do with insurance claims. Your Honor, you're correct in the basic argument that if there is a cargo loss and that cargo owner is frustrated in recovering his insurance from his marine insurer, that is... There's a cargo loss and the insurance companies either negligently or intentionally do a wrong because of which the insurance policy is read as not covering. What your argument, at least on that side of your brief, suggests that that would not be an admiralty claim. That, I think, would mean that most admiralty claims that there have been over all the years would not be in court. The distinction here, Your Honor, is this is not a first party maritime plan. What's happening here is the appellant is four levels above the vessel owner and the cargo owner. He doesn't have a cargo claim against us. He has already paid a cargo claim downstream. Then you go back to Judge Newman's question, which was with respect to the damage originally, but the same thing is here. Was the original injury one which was maritime and everything else then flows from it? What Judge Newman was asking is, was it unseaworthiness that led to the detention that led to the abandonment? I'd ask the same thing with respect to the insurance claim. Your Honor, let's go back to your example where there's a gentleman sitting on the shore with a gun and he shoots from New York to Connecticut, but let's change it. He's at the Battery in New York and he shoots a gun and hits someone on the Staten Island Ferry. Is that a maritime claim? That is not a maritime claim. That's what we're dealing with here. This is not a first party maritime insurance claim. This is an insurance company in Germany who's looking to recover by subrogation against individuals who are not the owner of the vessel, who are not the ship managers of the vessel. Those are corporate entities. Mr. Chalice already lost that argument in Pacific Gulf versus vigorous shipping 2021 Westlaw 1167855 when he sued the companies. This is not a maritime insurance recovery matter. It's not a first party claim. At bottom, appellant paid an insurance claim who was contractually obligated to pay and is now seeking payment from individual defendants based on five causes of actions grounded in the Torda conspiracy. As pled, the defendants alleged conspiracy occurred in the offices in Greece and New York and had oral argument before the district court. This is important. Council admitted that defendants alleged torts were, quote, not done on board the vessel, end quote. That's ECF 60 transcript page 29. That again misses the point. The question is whether this was sufficiently separate from a chain that derives from an injury that happened at sea. And that's it is. At one point, you say yes. Then another point, you make an argument which says simply because they were dealing with things sitting in an office in Germany, that means it doesn't. It wouldn't be admiralty. That's too broad. Well, the district court found that the plaintiff argued that it was its inability to seek reimbursement on the vessel's insurance policies for the amount paid to resolve Marabini's claim did not occur on navigable waters. The injury was not caused by a vessel on navigable waters. And if we go to where the quote, unquote, effect would have. If there hadn't been unseaworthiness, let's assume, you know, let's go back to whether they sufficiently pled unseaworthiness or not. But if there hadn't been unseaworthiness, wouldn't all this have not happened? That's not true, your honor. The vessel was detained. What the complaint says is six months after the vessel was detained, there was this alleged conspiracy by the corporate by individuals in Greece and New York to abandon the vessel. The vessel was detained by the Brazilian government. That was whether it was unseaworthy or not. It was it was the detention that led to this claim, not the conspiracy led to it. But what led to the detention? That's not been alleged in the complaint, your honor. We're not dealing with that here. We're dealing with five distinct non-maritime torts. Mr. Chalice already had the ability to sue others in others jurisdiction, which one was in Seattle and one was in Houston. And he lost both of those. Are you saying it was not detained because it was unseaworthy? I'm saying there's no allegation in the complaint that there was that it was detained for unseaworthy reasons. Why was it? If that is so, shouldn't there be an amendment? Shouldn't we an amendment be allowed to see if they want to do it? Has it been requested? Has an amendment been requested? It has not been requested. They had every right to do it. But why was it detained in your view? I'm not I'm not part of the Brazilian government. I don't know why it was detained. Did it have deficiencies that that if those deficiencies were accurate, does that make the vessel, quote unquote, unseaworthy? That's never been detained. That's never been determined. Earlier, you said there was nothing in the complaint about unseaworthiness. What about count five, which alleges a negligent failure to ensure that the vessel was seaworthy? That's not a claim that the vessel, that's not a claim that my client. Now you're jumping again to the other thing. Judge Newman asked you what you first denied, that there was any claim of unseaworthiness. He showed you something in the complaint that flowed from that. That allegation is that my clients were negligent, which resulted in the vessel being unseaworthiness. My clients are individuals. They're not the corporate owner or the ship manager. That's why they didn't say, quote unquote, the vessel was unseaworthy. What they said was the negligence of Mr. Gordon, Gordon McAuliffe led to the unseaworthiness. That is a distinction with a difference. Why is it a bad pleading? Is it just too attenuated when you say it led to it? The alleged conspiracy, the alleged negligence, that doesn't bear a substantial relationship to maritime activity. It's people in Greece talking to people in New York and allegedly saying, the vessel's detained in Brazil, let's just leave it there. That's not a maritime claim. That is a conspiracy. People argument that even if the vessel was unseaworthy, and even if that led to its detention, the chain starting from unseaworthiness and ending up with cargo damage is just too attenuated to let the initial unseaworthiness be a maritime tort causing your damage. Is that the argument? It's too attenuated? Correct. It's two separate events. We have the detention alleged unseaworthiness. Excuse me. Two separate events is different from saying too attenuated. You have two separate events when you have something being at sea and a separate event, somebody decides not to pay the insurance. That's a separate event. No one would say that's too attenuated. I don't understand which of these things you're arguing. You're arguing that there's no unseaworthiness. You're arguing that these are separate events, and you may be arguing that it's too attenuated, but I'm getting lost. With respect to unseaworthiness, my clients don't have a duty to make the vessel seaworthy. They're individuals. They're not the corporate owner, and they're not the corporate ship manager. That's not a defense to liability. That doesn't sound like a defect in jurisdiction. If unseaworthiness is the initial cause, and if the chain is not too attenuated, it may be, but if it's not, the fact that your client is not liable is a defense on the merits. It's not a jurisdictional answer. They're not suing my individual clients for unseaworthiness. They're suing my client for cargo damage, and they're not suing my client for damage to the vessel. What they're suing my client for is the alleged conspiracy with the vessel's P&I club to cancel insurance. That's the attenuation. We are four steps removed. We're not the vessel's owner. We're not suing you for damage. They're suing you for conspiracy. Conspiracy is part of the claim. Damage to cargo is part of the damage. It doesn't really help me for you to say, no, they're not suing us for the damage. They're only suing us for the claim of conspiracy. If the conspiracy, even through an attenuated chain, resulted in damage, then they are suing you for the damage. They are suing me for the subrogation. They're not suing me for cargo damage. I'm not a first-party insurer. I have no duty to them. Okay. In any event, your time has expired. Let us hear from American Steamship, the other insurance provider. Morning, counsel. Morning, your honors. My name is Robert Brown, and I'm with the law firm of Brown, Gavalis, and Fromm. We represent the appellees, the American Club, and Ship Owners Claims Bureau. We believe that the district court correctly determined that this court lapsed subject matter jurisdiction over the case. The analysis is clear that the appellants cannot satisfy the first test of location as set forth by the Supreme Court in Gruber. In order to satisfy the location test, the appellant has to establish that the alleged torque occurred on navigable waters or was caused by a vessel on navigable waters. As the court below recognized, the alleged conspiracy to abandon the vessel and to terminate its insurance coverage either occurred on navigable waters, nor was it caused by a vessel on navigable waters. Why was it not caused by a vessel, counsel? Why was it not caused by a vessel on navigable waters? If it was the vessel on navigable waters, which was, let us assume, unseaworthy, and for that reason abandoned, and for that reason gave rise to an insurance claim, and that insurance claim was what gave rise to the alleged conspiracy, why wasn't this caused by an event on navigable waters? It may be too attenuated, I don't know, but that there is a causal chain to what you did seems to me to be there if there was an original claim of unseaworthiness. Well, there is no claim against us for unseaworthiness. There are no contractual causes of action. The claim against us is merely that we conspired to cancel insurance. There is no claim for failure to pay an insurance claim. That brings me back to the previous problem. Every time insurance companies would conspire on land not to pay for a ship that sank on the high seas, your argument would seem to say that is not admiralty, and if that is so, 99% of the would not be an admiral. But that is not the situation that we have here. There is no one claiming for insurance coverage from our client. There has never been a claim for insurance coverage from our client. There hasn't been a claim. The claim against us is that we conspired with someone and committed a fraud on land. There has been no claim. Wasn't it your insurance that was cancelled? Isn't that part of the claim tort? All the claims are tort. There's no first party claim against us to pay under our contract. Why does it matter whether it's a first party claim or a subrogation claim or a banana claim if it derives from a claim that derives from the abandonment of a ship that was abandoned because it was on seaworthiness? That's what I want to know. Because the Supreme Court has said that the allegations of the complaint have to arise from a vessel. The Supreme Court said that in Rhubart after the Admiralty Extension Act expanded Admiralty jurisdiction to the point that it seemed to cover things like, as Chief Judge Katzman previously said, two people fighting on a dock and falling into the water or two swimmers. And it's at that point that the Supreme Court said, no, it doesn't even involve a broader law than it was before, doesn't cover views. But in terms of what was traditionally in Admiralty, they didn't go back on that. And isn't this exactly perhaps to attenuate it? Perhaps there wasn't a claim of unseaworthiness, but if those things were there, isn't this exactly the kind of chain that prima facie anyway is in Admiralty? Whether then there's liabilities is another issue. Well, I agree that it is far attenuated, but in fact, this is a tort. If you have a land-based tort, you can't take it back and say, well, that occurred. The analysis has to be on what the claim is. There is no claim in this case for unseaworthiness. There is no claim in this case for breach of contract. There is no claim in this case that we failed to pay a valid claim. None of those claims that might be maritime, that might trigger at me, but not a tort. No, no. There is no claim against you, counsel. There is no claim against you for unseaworthiness. The question is, does the complaint allege unseaworthiness as the starting factor in what then led to what is the complaint against you? Well, yes. I think they would like to put a lot of things that they can't claim as part of it, but the analysis has to be on what they are actually claiming against us, and what they're claiming against us is fraud, is conspiracy. Those things, land-based conspiracies have been found. You started with that before, but you didn't quite finish the thought. You said the claim is for conspiracy. Let's finish it out. Conspiracy to do what? Conspiracy to abandon a vessel and cancel its insurance. All right. If an individual, never mind a conspirator, an individual insurer had canceled insurance and then the vessel sinks, is that a maritime tort, the act of cancellation? It would depend. A denial of a claim directly related to a maritime insurance would be a maritime claim, but not a conspiracy. I'm not denying your claim. I've already canceled your policy yesterday, so denial doesn't even come up. You don't have insurance with me because I canceled it yesterday. That would not be a maritime claim if they didn't have insurance. If it was a wrongful termination of insurance has nothing to do with the maritime, just as it could be a termination of insurance on a building could be wrongful termination. That's a different scenario. The time has expired, counsel. I'm sorry, Judge Calabresi, Judge Newman, do you have questions? Okay, then we'll turn to Attorney Chalos, who reserved three minutes for rebuttal. Turn on your sound. Thank you, Your Honors. I'll speak as quickly as I can to make my points. As the court already noticed, the claims of unseaworthiness appear in paragraphs 164 to 168 of the complaint. Also, the notions of unseaworthiness appear at paragraph 67, 80, 81, 87, amongst other places. Now, in those other clauses I'm citing to, while the talismanic phrase unseaworthy may not be used, the actual description of what was wrong gives rise to the unseaworthy claim. The word unseaworthy, and in this context we take it to mean the absence of seaworthiness or unseaworthiness, the word appears, but where in your complaint do you say the unseaworthiness caused the damage to the cargo? Again, that is the chain of events that we described earlier in my first go-round to the court. Counsel for the Gorda Mihaly brothers made representation that he represents individuals, but at paragraph 96, there's an allegation that the individuals misrepresented the ownership interests of the vessel, and that was a statement that came from the insurers themselves. An amendment to a request to amend was in fact requested. You'll find it in the request, in the opposition to the motion to dismiss, and Judge Abrams denied it as futile, and I think that's found at joint appendix page 192. What you wanted to amend to say? Yeah, we will amend it to say and maybe tell her what you wanted to add by way of amendment. Any deficiencies that the court deemed with respect to the pleading, including the the unseaworthiness. What specifically? Well, Your Honor, I'm very sorry, I don't have it in front of me. I can't give you the exact language, but broad brush strokes it was to correct any pleading deficiencies which may exist. That's too broad. Are you claiming something about the unseaworthiness of the vessel or other such thing causing the abandonment? That's the question. Yes, we will. That's correct. No, no, no, no, no. It doesn't matter what you will. You're already here on appeal, and now one of your claims is she wrongfully denied an amendment. Well, she can only wrongfully deny an amendment if that amendment should have been granted. So that's why I think we're trying to get at you to tell us if you don't have the precise wording. Yeah. Tell us the the substance of the amendment that you say she wrongfully denied and to say it remedied deficiencies. Every amendment offered for that purpose. So that doesn't help us. Well, Your Honor, just to be clear, the district court wrote the following, because any proposed amendment would be futile in light of the deficiencies identified in this opinion, the court denied. But if she correctly denied the very amendment you proposed, then there would be no basis to reverse her. So it comes back to what did you tell her you wanted to add? All right, we'll look at it. Presumably, your motion is in the record, is it not? Yes, it is. All right, we'll find it. In conclusion, counsel? Yeah. The position urged by the American Club makes no sense. What they're asking the court to do is to apply a rigid locality test. They've argued, well, it wasn't on a vessel, it wasn't caused by the vessel navigation. And that would give us the perverse, casuistic result that all the courts that looked at the issue say they're trying to avoid. Here, maritime jurisdiction is for the protection of maritime commerce. Here, you've got parties that own, operate vessels, that maintain vessels, repair vessels, carry cargo on vessels, and insure vessels. There's no greater case for protection of maritime commerce than holding tortfeasors, wrongdoers in the maritime space accountable for what they've done. Thank you, counsel. Thank you all. Interesting case. We'll reserve decision.